**Earl G. PITRE, Sr. and Earl G. Pitre, Jr.**

v.

**LOUISIANA HEALTH SERVICE AND INDEMNITY COMPANY.**

Civ. A. No. 88–1255–LC.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Nov. 18, 1988.

Gregory P. Massey, Jones, Tete, Nolen, Hanchey, Swift & Spears, Lake Charles, La., for plaintiffs.

Fred W. Davis, Paul J. Hebert, Sonnier, Hebert & Hebert, Abbeville, La., for defendant.

### RULING ON REPORT AND RECOMMENDATION OF THE MAGISTRATE

VERON, District Judge.

This matter comes before the Court upon the plaintiffs' motion to remand and motion for sanctions under 28 U.S.C. section 1447(c) and Rule 11 of the Federal Rules of Civil Procedure. The defendant opposed the motions and filed memoranda and exhibits in support of the position. Oral arguments were heard on the plaintiffs' motion on Wednesday, August 31, 1988. Magistrate James T. Trimble, Jr. signed a written report and recommendation, urging that this case be remanded back to the Fourteenth Judicial District Court, Parish of Calcasieu, State of Louisiana, due to a lack of federal question jurisdiction. The

Magistrate further recommended that the defendant's removal of this suit from state court be found in violation of Rule 11 and 28 U.S.C. § 1447(c), concluding that the case was removed improvidently, without jurisdiction, and without good grounds in law and fact. After thorough review of the law and facts in the case, the Court agrees in part with the Magistrate's Report and Recommendation.

## FACTUAL BACKGROUND

The plaintiffs, Earl Pitre, Sr. and Earl Pitre, Jr., filed suit in state court seeking to collect on a medical insurance policy issued by the defendant, Louisiana Health Service and Indemnity Company, d/b/a Blue Cross of Louisiana (Blue Cross). Paragraph 2 of the plaintiffs' petition states that Mr. Pitre, Sr. is a partner in the law firm of Woodley, Barnett, Williams, Fenet, Palmer & Pitre (the law firm). Paragraph 3 of the plaintiffs' petition alleges that Blue Cross issued a comprehensive major medical group insurance policy to the law firm, which provided coverage to the law firm and its employees and their dependents.

The insurance contract, made a part of the record, states that the name of the group insured is "Woodley, Barnett, Williams, Fenet, Palmer & Pitre." In the contract amendments, the employer is named "Woodley, Barnett, Williams, Fenet, Palmer & Pitre." On the application filled out by Mr. Pitre, Sr., there appears a box in which the applicant is to place the name of his employer. Mr. Pitre inserted the words "Woodley, Barnett, et al." The form contains no request for the applicant to designate whether he or she is the employer or an employee of the insured.

Subsequent to the filing of the state court petition, Blue Cross removed the case to federal court, alleging federal question jurisdiction (*see* 28 U.S.C. 1441). The defendant alleged that Title 29, Section 1001, *et seq.*, the Employee Retirement Income Security Act (ERISA), governed the rights and responsibilities of the parties. The defendant further asserted this notion in its answer at paragraph 14, stating:

Further, in the alternative that this court would find defendant, Blue Cross liable, then defendant further avers that the subject claim or claims are regulated by the provisions of the Employee Retirement Income Security Program, Title 29, Section 1001, et seq., such that penalties as alleged by petitioners' are not recoverable.

The penalties referred to are prayed for by the plaintiffs pursuant to the alleged arbitrary and capricious refusal of Blue Cross to pay the plaintiffs' claims. *See*, LSA–R.S. 22:657.

The plaintiff then filed the instant motion to remand and motion for sanctions under 28 U.S.C. Section 1447(c), and Rule 11 of the FRCP. In the Report and Recommendation, signed on September 8, 1988, Magistrate James T. Trimble found in favor of the plaintiffs and assessed penalties and attorneys' fees to the defendant.

## ANALYSIS OF THE LAW AND FACTS

■ In 1974, Congress enacted the Employee Retirement Income Security Act (ERISA) designed to:

... protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal Courts. 29 U.S.C. § 1001(b).

As stated in 29 U.S.C. § 1001(a), the Act became necessary as a result of the enormous growth in the number and size of employee benefit plans in the proceding years; the fact that "millions of employees and their dependents are directly affected by these plans;" and the desire "... that minimum standards be provided assuring the equitable character of such plans and their financial soundness." 29 U.S.C. § 1001(a). Thus, the intent of ERISA according to the declaration of policy included in the Act is to protect the interests of

employees and their beneficiaries in employee benefit plans and to provide comprehensive federal regulation of such plans in their entirety.

The defendant, Blue Cross, argues that the insurance policy in question is an "employee welfare benefit plan" under 29 U.S.C. § 1002(1), which provides in part:

> The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan, fund, or program which was heretofore or is hereinafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or was maintained for the purpose of providing for its participants of their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits,....

A good interpretation of what is meant in the ERISA statute by "employee welfare benefit plan" or "welfare plan" is found in the 11th Circuit decision of *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982). Under *Donovan*, a welfare plan requires: (1) a 'plan fund or program' (2) established or maintained (3) by an employee or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to participants or their beneficiaries. *Donovan, supra*, 688 F.2d 1367, 1371. The opinion continues by further defining "plan, fund, or program" as implying "... the existence of intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits." *Donovan, supra*, 688 F.2d 1367, 1372. Additionally, according to *Donovan* the "established or maintained" portion of the plan definition requires that:

> First, an employee organization or both must establish or maintain a plan, fund, or program, and, second, the plan, fund, or program must be established or

maintained for specific purposes. *Donovan, supra*, 688 F.2d 1367 at 1372.

*Donovan* states, that although in most cases a plan is established pursuant to a written instrument, this is not a requirement. Under *Donovan*, the ERISA's fiduciary and reporting provisions do require a plan to be established by written instrument. However, the court in *Donovan* said this is a requirement for fiduciaries and administrators and not a precondition to coverage by ERISA. The decision further holds that, given the policy of the Act to protect participants and beneficiaries in employee benefit plans, it would be inconsistent to allow those establishing these plans to frustrate ERISA's policies simply by failing to file a written plan. In determining whether or not a plan exists, it is the actual reality of a plan and not a decision to award benefits that is conclusive. Thus the test, according to *Donovan*, will be "... whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits."

Even though *Donovan* states that a written instrument is not a precondition to ERISA coverage, ERISA does not regulate bare purchases of health insurance when the purchaser neither directly or indirectly owns, controls, administers or assumes responsibility for the policy or its benefits. *Taggart Corporation, et al v. Life and Health Benefits Administration, Inc., et al*, 617 F.2d 1208 (5th Cir.1980); *cert. denied sub nom. Taggart Corp. v. Efros*, 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981).

The plaintiffs claim in their Original Brief in Support of the Motion to Remand, that "although the law firm collected premiums for the policy and forwarded those to Blue Cross, the law firm did not match contributions or in any way fund the payment of premiums for partners and their families." Initially, reflecting upon *Taggart*, it seems that ERISA does not apply to the law firm's group policy. However, no evidence indicates that the law firm afforded the employees under the group

policy the same treatment as it did the partners. Therefore, insufficient evidence exists for this Court to conclude that ERISA does not govern the policy at issue.

Even if the Court were to find ERISA coverage in this matter, the Court concludes that Earl Pitre, Sr. was not an "employee" of the law firm, but rather a partner. Therefore, the Court finds ERISA inapplicable to the plaintiffs' claim.

Following the Supreme Court case of *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)[1] defendant insurance carriers, such as Blue Cross, began removing cases to federal court as a standard reaction to a suit on a group health policy. The majority of these cases address the issue of ERISA preemption of state law claims. But the issue that faces this Court, whether or not ERISA applies to a claim made by a partner in a law firm who is included with the employees of the firm under one group policy, is *res nova*.

29 C.F.R. § 2510.3–3(b) reads in part:

> ... the term 'employee benefit plan' shall not include any plan, fund or program, other than an apprenticeship or other training program, under which no employees are participants covered under the plan, as defined in paragraph (d) of this section. For example, a so-called 'Keogh' or 'H.R. 10' plan under which only partners or only a sole proprietor are participants covered under the plan will not be covered under Title I. However, a Keogh plan under which one or more common law employees, in addition to the self-employed individuals, are participants covered under the plan, will be covered under Title I. ...

The language in section (3)(b) clearly states that a plan which includes only partners is not covered by the Act. *See also Robertson v. Alexander Grant & Company*, 798 F.2d 868, 872 (5th Cir.1986).[2] In light of Congressional intent to protect the interest of employees and their beneficiaries in employee benefit plans, this Court interprets section 3(b) as a means of protecting employees who are placed under the same plans as partners. Section 2510.3–3(b) prevents any partnership attempt to circumvent the application of ERISA to employee benefit plans by including partners in the same plan as employees.

Although section 3(b) dictates ERISA coverage of benefit plans including both partners and employees, it does not give direction as to whether the partners under these plans are governed by ERISA. 29 C.F.R. § 2510.3–3(L)(2) seems dispositive of this issue. Section 3(c)(2) provides that a partner in a partnership and his/her spouse shall not be deemed to be employees with respect to the partnership. Blue Cross argues that Earl Pitre, Sr. was an employee of the Woodley, Barnett firm. Furthermore, the defendant asserts that even if Pitre was technically a partner in the law firm, Pitre represented to the defendant that he was an "employee" of the law firm. The Court finds these arguments unpersuasive.

The evidence in the record indicates that Mr. Pitre was a partner in the law firm. Even the name of the firm is supportive of this issue. Additionally, the fact that Mr. Pitre signed his name to the defendant's standard application form in the area captioned "employee" does not make him an employee under the Act. Whereas, Earl Pitre, Sr. was a partner in the law firm, the clear unambiguous language of Section 3(c)(2) makes ERISA inapplicable to the plaintiffs' claim against the defendant.

Blue Cross also argues that "ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) provides for a federal cause of action." Section 502(a) provides that a civil action may be brought: (1) by a participant or beneficiary—The defendant claims that Mr. Pitre is a "participant" in fact and law regardless of his partnership status. This general assertion, unsupported by law ignores

---

**1.** The Supreme Court in *Metropolitan Life* held that Congress intended for causes of action under the civil enforcement provisions of the Act to be removable to federal court regardless of whether or not the complaint refers to ERISA.

**2.** The Fifth Circuit held that ERISA is inapplicable to plans covering *only* partners.

the Act's definition of "participant." "The term participant means any employee or former employee of an employer...." 29 U.S.C. 1002(7). Section 1002(7) narrowly defines the word "participant" as an "employee" or "former employee." As a partner in the law firm, Mr. Pitre cannot be considered an employee. *See* 29 C.F.R. § 2510.3–3(c)(2).

Blue Cross also contends that Mr. Pitre is a "participant" according to 29 C.F.R. § 2510.3–3(d) which provides in part:

(d) *Participant covered under the plan.*

(1)(i) An individual becomes a participant under an employee welfare benefit plan on the earlier of—

(A) the date designated by the plan as date on which the individual begins participation in the plan;

The defendant states that the important term in section (3)(d), for purposes of this case, is the word "individual" and therefore contends, "since plaintiff obviously is an individual he is a participant pursuant to the regulation." Blue Cross misinterprets section 3(d). Section 3(d) merely instructs as to the date or time in which a person becomes a "participant;" 3(d) does not substantively supplement or modify the Act's definition of "participant."

For the foregoing reasons the Court finds that ERISA is inapplicable to this case.

## PENALTIES AND ATTORNEY'S FEES

The plaintiffs ask the Court to assess sanctions pursuant to Rule 11 and 28 U.S.C. § 1447. The Court finds that such an assessment is unwarranted.

Rule 11 provides in part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated ... The signature of an attorney or party constitutes a certificate by the signer that signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law, or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. ... If a pleading, motion, or other paper is signed in violation of this rule, the Court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Arthur R. Miller, Professor of Law, Harvard Law School and Reporter to the Advisory Committee on Civil Rules of the Judicial Conference, states: "but here are the four critical words—'formed after reasonable inquiry.'" A. Miller, The August 1983 Amendments to the Federal Rules of Civil Procedure (Federal Judicial Center 1984). He continues:

As the advisory committee note puts it, 'formed after reasonable inquiry' is a stop-and-think obligation.... There is now a mandated obligation on the part of an attorney to stop and think about his behavior.... The combined effect of these words is that a lawyer must stop and think on the basis of the facts and the law before 'shooting paper arrows in the air ...'

The Court finds that the defendant complied with the mandates of Rule 11 in removing this case to Federal Court. No reasonable allegations exist which indicate that the removal was made without basis, well grounded in fact and law.

Whereas, the issue of whether ERISA governs a claim by a partner in a law firm who is a participant in the firm's group insurance policy, covering both partners and employees, is *res nova*, the court cannot conclude that the defendant violated Rule 11 or 28 U.S.C. § 1447(c). Additionally, although the Court rejects the defend-

ant's argument that Mr. Pitre is an employee of the law firm as well as a partner, reasonable minds may differ on this matter. Therefore, sanctions are inapplicable.

For the foregoing reasons, the Court finds in favor of the plaintiff, and against the defendant, in holding that ERISA does not apply in this case. Accordingly, there is no federal question jurisdiction and the case is therefore remanded back to the Fourteenth Judicial District court, Calcasieu Parish, Louisiana.