PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY

v.

Melvyn COHEN

No. CIV CCB–99–2517.

United States District Court,
D. Maryland.

March 29, 2001.

Bryan D. Bolton, Derek Barnet Yarmis, Funk & Bolton, P.A., Baltimore, MD, for Plaintiff.

Bruce M. Plaxen, Law Office, Columbia, MD, William P. Dale, McChesney & Dale, Bowie, MD, Blaine Maxwell Kolker, Plaxen and Adler PA, Columbia, MD, Jeffrey M. Mervis, Mervis & Associates, LLC, Rockville, MD, for Defendant.

## MEMORANDUM

BLAKE, District Judge.

Provident Life and Accident Insurance Company ("Provident") filed an amended complaint on July 26, 2000 seeking to recover money paid to Melvyn Cohen ("Cohen") under a disability insurance policy. Counts One through Five assert common law claims; Counts Six through Eight state alternative claims for relief under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Essentially, Provident asserts that from March 1996 through June 1999 Cohen collected approximately $238,000 in benefits based on a claim of total disability under the policy when in fact he had resumed performing some of the duties of his former occupation. Cohen has filed an answer and counterclaim asserting he is entitled to reinstatement of his monthly benefits. Oral argument on numerous pending motions was heard January 5, 2001. My rulings follow.

*Provident's Motion to Dismiss Counterclaim (Docket No. 44) and Cross–Motion for Partial Summary Judgment (Docket No. 107)*

■ Count One of the counterclaim alleging a breach of fiduciary duty will be dismissed, as the relief sought is available under Counts Two and Three. *See Katz v. Comprehensive Plan of Group Ins.,* 197 F.3d 1084, 1088–89 (11th Cir.1999). That part of Count Four seeking punitive damages and alleging a first-party insurance bad faith claim, which has not yet been recognized under Maryland law, also will be dismissed. Accordingly, Provident's Motion to Dismiss will be Granted. Its motion for summary judgment on Counts Two and Three, in which it asserts that ERISA does not apply, will be Denied. *See infra* at 3–9.

*Provident's Motion to Enlarge Deposition Hours and Extend Pretrial Deadlines (Docket No. 85)*

Considering the amount in controversy and the inadequacy of the administrative record as a basis for the court to resolve Provident's claims against Cohen, even if ERISA governs those claims, the motion will be **Granted**. *See Quesinberry v. Life Ins. Co. of North America,* 987 F.2d 1017, 1026–27 (4th Cir.1993). Discovery in this case will be consolidated with discovery in the related case of *Provident v. Cohen,* CCB–00–2646. Each side may have a total of 30 hours for fact witness depositions. The discovery deadline will be extended until **June 28, 2001**; a status report will be due the same day; requests for admission will be due **July 9, 2001**; final dispositive motions in both cases will be due **August 8, 2001**.

*Provident's Motion to Strike (Docket No. 79)*

■ Motions to strike under Rule 12(f) are unfavored and should not be granted absent a showing of undue prejudice. Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 at 647–51. Because Provident has other remedies for its concern about responding

to a first-party insurance bad faith claim (e.g., its Motion to Dismiss granted above), the motion to strike will be **Denied.**

*Provident's Motion for Sanctions Against Melvyn Cohen (Docket No. 82)*

Provident's request for a default judgment and dismissal of Cohen's counterclaim will be **Denied,** as the remedy is too extreme in light of the questionable prejudice suffered. *See U.S. v. Shaffer Equip. Co.,* 11 F.3d 450, 462–63 (4th Cir.1993). Cohen's conduct is not condoned by the court. Copies of the documents, however, were retained by Mr. Cutler and produced in time to be used by Provident. A request for a lesser sanction may be renewed if warranted by later developments in the case.

*Provident's Motion for Sanctions and a Show Cause Order as to Montgomery Kitchen & Bath, Inc. (Docket No. 83)* [1]

In light of Mr. Cutler's affidavit, Provident's motion for a show cause order will be **Denied.** [2] Because the documents were relevant and the failure to produce them in a timely fashion is the responsibility of Montgomery Kitchen & Bath, however, Provident may be entitled to recover some reasonable portion of the attorneys' fees incurred in connection with its motions to compel directed against Montgomery Kitchen & Bath. Provident may have until **April 30, 2001** to submit an appropriate affidavit and statement of such fees. To that extent, the motion for sanctions is **Granted.**

---

1. Provident's motion for leave to file its reply memorandum and exhibits under seal (Docket No. 96) is **Denied,** as no good cause for sealing has been shown.

2. Provident's Motion to Strike this affidavit (Docket No. 121) will be **Denied.**

*Cohen's Motion for Summary Judgment on the Amended Complaint (Docket No. 89)*

Cohen filed a motion for summary judgment on the amended complaint in which he argues that the policy in question constitutes an ERISA plan and that the state common law claims raised by Provident in Counts One through Five are preempted by ERISA; he also argues that he is entitled to summary judgment on the ERISA claims.

In 1987, Colonial Distributors, Inc. ("Colonial") established an ERISA plan by obtaining individual disability income insurance policies for Melvyn Cohen, then president of Colonial; Robert Calhan, vice-president; Stuart Schulman; and Jane Schumacher, secretary-treasurer of Colonial.[3] Colonial paid the premiums for all four individuals. In March 1993 or 1994, however, Colonial ceased making premium payments for Mr. Schulman and Ms. Schumacher and reduced the monthly benefits for Mr. Cohen and Mr. Calhan. Colonial thereafter paid the premiums for Mr. Cohen and Mr. Calhan. Ms. Schumacher continued making premium payments for several years, but her policy lapsed on June 1, 1997. After March 1993 or 1994, the only persons whose premiums were paid under Colonial's "plan" were the two 50% shareholders, Mr. Cohen and Mr. Calhan. Following cardiac bypass surgery in November 1995, Cohen made a claim for benefits under his policy on January 15, 1996.

The most difficult issue raised by the parties is whether the Provident policy

---

3. The parties agree that Ms. Schumacher was an employee of Colonial. Mr. Schulman apparently was involved in some other business venture with Mr. Cohen and Mr. Calhan.

under which Cohen received benefits was part of a plan covered by ERISA. A discussion of that issue follows.

■ ERISA covers "employee welfare benefit plans," defined to include "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing [benefits] for its participants." 29 U.S.C. § 1002(1). Ultimately, "[t]he existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person." *Kanne v. Conn. Gen. Life Ins. Co.,* 867 F.2d 489, 492 (9th Cir.1988) (citation omitted).

The leading Fourth Circuit case, *Madonia v. Blue Cross & Blue Shield of Va.,* 11 F.3d 444 (4th Cir.1993), adopted an Eleventh Circuit analysis of whether an ERISA plan exists, looking for "(1) a plan, fund, or program (2) established or maintained (3) by an employer... (4) for the purpose of providing medical, surgical, hospital care, [or] sickness...benefits (5) to participants or their beneficiaries." 11 F.3d at 446 (citation omitted). It is undisputed that the company bought insurance policies to cover at least four people including its two co-owners and one employee, thus establishing the policies in 1987 as an ERISA plan under the second prong. Under the fifth prong, a federal regulation provides that to have an ERISA plan, at least one employee must be a participant covered under the plan, and that certain people with ownership stakes in the company, and their spouses, cannot constitute "employees" to satisfy this requirement. 29 C.F.R. § 2510.3–3(b–c). As of 1996, when Cohen filed his claim for benefits, Colonial paid the premiums only for the policies of the two co-owners, although one employee

was still paying the premiums herself to keep her policy in force.

In *Madonia,* one employee was included with the company's sole owner at the issuance of an insurance policy and later dropped, and another employee was covered under a separate policy. The court defined the company's plan to embrace both policies. The past participation of one employee in the owner's policy, the coverage of another employee through a separate policy, and the presence in the company of two other employees who were eligible for coverage (even though they were not and had never been covered under any policy) satisfied the "participant" requirement, which is met by "any employee ... who is or may become eligible to receive a benefit of any type" from a plan. 29 U.S.C. § 1002(7).

■ As explained in *Madonia,* a corporation's sole shareholder does not qualify as an employee/participant under 29 C.F.R. § 2510.3–3 for purposes of determining, in the first instance, whether an ERISA plan exists. 11 F.3d at 448 ("It is true that Dr. Madonia cannot be considered a 'participant' for purposes of determining the existence of an employee benefit plan.") If a plan exists, however, as was true in *Madonia* because other non-owner employees received benefits under the plan, then a sole shareholder who constitutes a common law employee can be a "participant" in the plan for the purpose of claiming benefits under 29 U.S.C. § 1132(a)(1). *Id.* at 448–50. In other words, if a plan exists, a corporate officer who is an "employee" of the corporation within the common-law definition, *see Nationwide Mutual Ins. Co. v. Darden,* 503 U.S. 318, 323–25, 112 S.Ct. 1344, 1348–49, 117 L.Ed.2d 581 (1992), may also be a "participant" in the company's welfare benefit plan. *Madonia,* 11 F.3d at 448–50.

[redacted] The question presented in this case is whether a 50% shareholder in a corporation can be considered an employee/participant under the DOL regulation related to determining the existence of an ERISA plan. It is notable that the regulation limits its reach to individuals (and their spouses) who "wholly" own a business, "whether incorporated or unincorporated." While "partner[s] in a partnership" also are excluded from the definition of employees under the regulation, no mention is made of a corporation's co-owners who are not married to each other. Under the test announced in *Darden,* both Cohen and Calhan would qualify as "employees" of Colonial, which has a separate corporate existence. *Whitehead v. Safway Steel Prods., Inc.,* 304 Md. 67, 77–78, 497 A.2d 803, 808–09 (1985); *see also Madonia,* 11 F.3d at 449 (applying Virginia law). Accordingly, unless they are excluded by the regulation, they appear to satisfy the statutory definition of a participant at 29 U.S.C. § 1002(7), and the policies obtained by Colonial would constitute a plan under the test adopted by the *Madonia* court. *See Madonia,* 11 F.3d at 447–48.

Although the Ninth Circuit has stated that covering only two co-owners of a company cannot make a policy an ERISA plan under the regulation, *see Kennedy v. Allied Mutual Ins. Co.,* 952 F.2d 262, 264, 266 (9th Cir.1991), the Fourth Circuit's approach in *Madonia* suggests the opposite outcome.[4] The *Madonia* court broadly construed the definition of a "plan" under ERISA to include a policy under which the only covered member of the company was its sole shareholder. 11 F.3d at 447; *see also Peterson v. Amer. Life & Health Ins. Co.,* 48 F.3d 404, 407–08 (9th Cir.1995) (considering company's coverage provided under several policies as one plan). *But see Slamen v. Paul Revere Life Ins. Co.,* 166 F.3d 1102, 1105 (11th Cir.1999) (declining to find that a policy that would not be an ERISA plan standing alone was part of a broader ERISA plan when considered with other company policies). Unlike the sole shareholder in *Madonia,* neither of the company's two 50% co-owners individually controls the plan. *See Schwartz v. Gordon,* 761 F.2d 864, 869 (2d Cir.1985) (recognizing that a plan involving only a self-employed employer has the least need for the fiduciary protections of ERISA).

In addition, the *Madonia* court noted that "establishment or maintenance" as an ERISA plan may be sufficient to make a policy an ERISA plan, 11 F.3d at 447, and it is undisputed that the policy in question was initially established as an ERISA plan. *See also Peterson,* 48 F.3d at 408 (noting that establishment as a plan is sufficient).[5] Colonial, like the company in *Madonia,* invested corporate time, money, and effort to establish plans for its employees. 11 F.3d at 448. Ms. Schumacher did continue her individual policy through 1997, though it is unclear whether Colonial provided any administrative assistance to her in doing so.

[redacted] The court recognizes that many of the arguments advanced for excluding plans that only cover sole owners, or sole owners and their spouses, appear to apply in this case. ERISA was designed to protect workers "lack[ing] . . . control" over the management of funds, but Cohen and Calhan do, at least jointly, have that con-

4. It is notable that the Ninth Circuit's statement was dictum and preceded *Darden.* Although the co-owners in *Kennedy* were brothers, the *Kennedy* court did not rely in any way on the sibling relationship of the two co-owners in that case, and I do not distinguish *Kennedy* on that basis.

5. *But see Peterson,* 48 F.3d at 407–08 (noting that the broader plan of which the policy was a part included "at least one non-partner employee" "at all times relevant to this action").

trol. *Schwartz,* 761 F.2d at 868. ERISA does not apply where "all the benefits" of a given policy "flow to the owner," and in this case all benefits arguably have flowed to the owners since 1993 or 1994, depending on the status of the individual policy continued by Ms. Schumacher. *Slamen,* 166 F.3d at 1106. Although in another case ownership might be so diffuse that a part-owner lacked control and needed ERISA's protection of his or her interests,[6] this does not appear to be that case. ERISA's coverage, however, is not necessarily co-terminous with its central policy concerns. Where non-owner employees convert their group policy to individual policies on leaving the company, ERISA may continue to apply to those policies, *see Peterson,* 48 F.3d at 408 (discussing conversion policies), though none of its core concerns would apparently apply, since the company's owners would not have control over funds benefitting the employees or former employees.

Considering that Cohen's policy was covered by ERISA when the plan was established in 1987, that one non-owner employee participated in the plan until 1993 or 1994 and arguably until 1997, and that as of 1996 the two 50% shareholders were employees under *Darden* and were not explicitly excluded by the DOL regulation, I conclude that the Provident policy under which Cohen received and claims benefits, and for which Provident seeks a return of benefits, is governed by ERISA. Accordingly, the state law claims in Counts One through Five are pre-empted. To that extent, Cohen's motion will be **Granted.**

■ Cohen's motion for summary judgment on Provident's ERISA claims, however, will be **Denied** because of the existence of genuine disputes of material fact

as discussed below in connection with his counter-claim.

### Cohen's Motion for Summary Judgment on his Counterclaim (Docket No. 90)

This motion must be **Denied.** The record developed in this case to date raises numerous disputes of material fact about Cohen's entitlement to disability benefits under the Provident policy, whether the determination is made under ERISA or under state contract law. The apparent discrepancy between many of Cohen's statements to Provident about his activities, on the one hand, and the activities indicated by documents obtained from Montgomery Kitchen & Bath and elsewhere in the course of discovery, on the other hand, forecloses any grant of summary judgment to Cohen.

### Provident's Motion to Strike (Docket No. 100)

This motion is **Denied.**

### Provident's Motion in Limine Concerning Cohen's Destruction of Documents (Docket No. 106)

This motion is **Denied** without prejudice subject to renewal if appropriate at the close of discovery.

---

6. *But cf.* 29 C.F.R. § 2510.3–3(c)(2) (excluding all policies covering only partners, regardless of the number of partners and thus the degree of any given partner's influence over ERISA-related decisions).